## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ENDO VENTURES LIMITED, PAR
STERILE PRODUCTS, LLC,
and NEVAKAR INJECTABLES, INC.

        *Plaintiffs*,

        v.

BAXTER HEALTHCARE CORP.

        *Defendant.*

C.A. No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Endo Ventures Limited ("Endo"), Par Sterile Products, LLC ("Par Sterile"), and Nevakar Injectables, Inc. ("Nevakar") (collectively, "Plaintiffs") hereby bring this action against Defendant Baxter Healthcare Corp. ("Baxter") for infringement of the claims of U.S. Patent Nos. 10,226,436 ("the '436 patent"); 10,420,735 ("the '735 patent"); 10,471,026 ("the '026 patent"); 10,568,850 ("the '850 patent"); and 10,646,458 ("the '458 patent") (collectively, "Patents-in-Suit").

## NATURE AND SUMMARY OF THIS ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

## THE PARTIES

2.      Plaintiff Endo is an Irish company with offices located at First Floor, Minerva House, Simmonscourt Road, Ballsbridge, Dublin 4, Ireland.

3.      Plaintiff Par Sterile is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 6 Ram Ridge Road, Chestnut Ridge, New York 10977.

4. Plaintiff Nevakar is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 1019 US Highway 202 #206, Bridgewater, NJ 08807.

5. Upon information and belief, Defendant Baxter is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at One Baxter Parkway, Deerfield, IL 60015.

6. Upon information and belief, Defendant Baxter is a pharmaceutical company that develops, manufactures, markets and/or distributes pharmaceutical products around the world, including in this Judicial District.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves substantial claims arising under the United States Patent Act (35 U.S.C. §§ 1 *et seq.*), as well as under the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202) because this action involves an actual case or controversy concerning the infringement of the Patents-in-Suit.

8. This Court has personal jurisdiction over Baxter because, among other reasons, it is incorporated in the state of Delaware and has designated its registered agent as The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

9. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Baxter is incorporated in the state of Delaware.

## THE PATENTS-IN-SUIT

10. The '436 patent, titled "Norepinephrine Compositions and Methods Therefor," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on

March 12, 2019.  Nevakar is the assignee of the '436 patent.  Endo is an exclusive licensee of the '436 patent and has sublicensed certain of its rights to its affiliate, Par Sterile.  A true copy of the '436 patent is attached as Exhibit A.

11.     The '735 patent, titled "Norepinephrine Compositions and Methods Therefor," was duly and legally issued by the USPTO on September 24, 2019.  Nevakar is the assignee of the '735 patent.  Endo is an exclusive licensee of the '735 patent and has sublicensed certain of its rights to its affiliate, Par Sterile.  A true copy of the '735 patent is attached as Exhibit B.

12.     The '026 patent, titled "Norepinephrine Compositions and Methods Therefor," was duly and legally issued by the USPTO on November 12, 2019.  Nevakar is the assignee of the '026 patent.  Endo is an exclusive licensee of the '026 patent and has sublicensed certain of its rights to its affiliate, Par Sterile.  A true copy of the '026 patent is attached as Exhibit C.

13.     The '850 patent, titled "Norepinephrine Compositions and Methods Therefor," was duly and legally issued by the USPTO on February 25, 2020.  Nevakar is the assignee of the '850 patent.  Endo is an exclusive licensee of the '850 patent and has sublicensed certain of its rights to its affiliate, Par Sterile.  A true copy of the '850 patent is attached as Exhibit D.

14.     The '458 patent, titled "Norepinephrine Compositions and Methods Therefor," was duly and legally issued by the USPTO on May 12, 2020.  Nevakar is the assignee of the '458 patent.  Endo is an exclusive licensee of the '458 patent and has sublicensed certain of its rights to its affiliate, Par Sterile.  A true copy of the '458 patent is attached as Exhibit E.

**NEVAKAR'S NOREPINEPHRINE
BITARTRATE IN 5% DEXTROSE PRODUCT**

15.     Nevakar is the holder of New Drug Application ("NDA") No. 214628 for norepinephrine in sodium chloride injection, which is currently pending at FDA.  There are three strengths of the Nevakar Products:  4 mg (16 µg/ml), 8 mg (32 µg/ml), and 16 mg (64 µg/ml)

norepinephrine bitartrate, each of which is stored in 250 mL infusion bags. The Nevakar Products, once approved by FDA, will be indicated for the restoration of blood pressure in adult patients with acute hypotensive states. The Nevakar Products are ready-to-administer products that require no further dilution prior to infusion.

16.     Norepinephrine is typically used during cardio-pulmonary resuscitation, in the treatment of cardiac arrest and profound hypotension, and for blood pressure control in certain acute hypotensive states. Currently-available norepinephrine drug products are not ready-to-administer, but rather are concentrated formulations requiring dilution prior to injection. Once diluted, the currently-available products degrade quickly and must be used within one day when stored at room temperature.

17.     Nevakar undertook substantial efforts to address the limitations of currently-available norepinephrine products. Based on intensive research and development starting in 2015, requiring specialized equipment and approximately 50% of Nevakar's research and development resources, Nevakar invented stable, ready-to-administer products. Consequently, Nevakar was awarded the Patents-in-Suit. Nevakar and Endo are depending on their ready-to-administer norepinephrine products as a major driver of revenue in the near term.

### BAXTER'S NOREPINEPHRINE BITARTRATE PRODUCTS

18.     Baxter filed NDA No. 214313 under Section 505(b)(2) of the Federal Food Drug and Cosmetic Act ("FDCA") on March 16, 2020 for ready-to-administer formulations of norepinephrine bitartrate in 5% dextrose (the "Baxter Products"). FDA approved that NDA on January 15, 2021 "for restoration of blood pressure in adult patients with acute hypotensive states." (*See* Ex. F (true copy of FDA Approval Letter for NDA No. 214313, dated January 15, 2021); Ex. G at 1 (true copy of product label for Baxter Products).)

4

19.     There are two strengths of the Baxter Products:  4 mg (16 µg/ml) and 8 mg (32 µg/ml) norepinephrine bitartrate, each of which is stored in a 250 mL infusion bag.  (Ex. G at 1, 7; Ex. H at 3 (true copy of FDA Product Quality Review for NDA No. 214313).)  The norepinephrine bitartrate used in the Baxter Products is a chiral compound in the R-configuration.  (Ex. H at 3.)  The Baxter Products' inactive ingredients include:  50 mg/ml dextrose monohydrate, water, and a combination of sodium hydroxide and hydrochloric acid.  (Ex. G at 7.)  The pH of the Baxter Products is 3.5-3.9 (*id.*), with an average pH of 3.8 (Ex. H at 21).  The Baxter Products do not contain any antioxidants.  (Ex. H at 18.)

## BAXTER'S OFFER FOR SALE OF ITS INFRINGING PRODUCTS

20.     Upon information and belief, Baxter has offered to enter and/or has entered a sales contract with Vizient, Inc. ("Vizient"), and other potential customers, for delivery of Baxter Products starting on or about September 1, 2021.  On July 15, 2021, Vizient, a group purchasing organization representing more than half of the healthcare organizations in the United States, sent Par Sterile a Request for Proposal ("RFP") stating that Vizient will entertain offers from pharmaceutical manufacturers to supply Norepinephrine Bitartrate in 5% dextrose injection from September 1, 2021 through March 31, 2024.

21.     On August 9, 2021, the Baxter Products appeared in the Price Rx® database.  Price Rx® provides pharmacy benefit managers and manufacturers current information regarding, *inter alia*, which pharmaceutical products have been offered for sale.  The Price Rx® listing of the Baxter Products, complete with detailed information such as the number of doses per package, shows that Baxter is now infringing the Patents-in-Suit by offering to sell the Baxter Products.  Furthermore, the Price Rx® listing, as well as the Vizient RFP requesting a delivery date of September 1, 2021, show that Baxter's launch is imminent.

22.     By letter dated February 19, 2021, Endo, through its affiliate Par Sterile, notified Baxter that the Patents-in-Suit cover ready-to-administer norepinephrine products.  Endo requested that Baxter consider these patents before launching the Baxter Products and to respect Endo's intellectual property rights.

**COUNT ONE**
**Baxter's Infringement of the '436 Patent**

23.     Plaintiffs re-allege and incorporate each of the preceding paragraphs as if fully set forth herein.

24.     Baxter's commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States of the Baxter Products constitutes infringement of at least claim 1 of the '436 patent, both directly under 35 U.S.C. § 271(a) and indirectly under 35 U.S.C. §§ 271(b) and 271(c), literally and/or under the doctrine of equivalents.

25.     Claim 1 of the '436 patent reads as follows:

> A ready-to-administer norepinephrine composition, comprising:
>
> an aqueous acidic solution having a pH range of between 3.7 and 4.3, wherein the aqueous acidic solution further comprises a chelating agent and a pharmaceutically acceptable salt;
>
> wherein the chelating agent is present in an amount of between 1 μg/ml and 100 μg/ml, and wherein the pharmaceutically acceptable salt is present in an amount of between 0.6 wt % and 1.2 wt %;
>
> norepinephrine dissolved at a concentration suitable for administration to a patient in need thereof, wherein the norepinephrine is an R-isomer;
>
> wherein the ready-to-administer norepinephrine composition is substantially free of antioxidants; and
>
> wherein the ready-to-administer norepinephrine composition is formulated such that after storage over at least three months equal or less than 10% of the R-isomer form will isomerize to the S-isomer and such that equal or less than 5% of the total norepinephrine will degrade to degradation products.

26.    Each of the Baxter Products is "[a] ready-to-administer norepinephrine composition."  (*See, e.g.*, Ex. G at 2.)

27.    Each of the Baxter Products contain "an aqueous acidic solution having a pH range of between 3.7 and 4.3."  (*See, e.g.*, Ex. H at 21.)

28.    The "aqueous acidic solution" of the Baxter Products also "comprises a chelating agent," namely the "bitartrate" component of the Baxter Products' active pharmaceutical ingredient.  (*See, e.g.*, Ex. G at 1.)  The '436 patent's specification discloses that "tartrate" is one example of a chelating agent.  (Ex. A at 5:2-8.)

29.    The "aqueous acidic solution" of the Baxter Products also comprises "a pharmaceutically acceptable salt."  The Baxter Products contain NaCl, which is created when hydrochloric acid and sodium hydroxide used to adjust the Baxter Products' pH are put into the formulation.  (*See, e.g.*, Ex. H at 18.)  The norepinephrine bitartrate in the Baxter Products is also "a pharmaceutically acceptable salt."

30.    The "chelating agent" of the Baxter Products "is present in an amount of between 1 µg/ml and 100 µg/ml."  The 4 mg strength of the Baxter Products contains roughly 15.9 µg/mL of bitartrate, which is the difference between the 31.9 µg/mL of norepinephrine bitartrate supplied and the resulting 16 µg/mL dose of norepinephrine base.  (*See, e.g.*, Ex. G at 7.)  The 8 mg strength of the Baxter Products contains roughly 31.8 µg/mL of bitartrate, which is the difference between the 63.8 µg/mL of norepinephrine bitartrate supplied and the resulting 32 µg/mL dose of norepinephrine base.  (*See, e.g.*, *Id.*)

31.    On information and belief, "the pharmaceutically acceptable salt" in the Baxter Products, namely the NaCl formed by combining hydrochloric acid and sodium hydroxide

7

and/or the norepinephrine bitartrate, "is present in an amount of between 0.6 wt % and 1.2 wt %" and/or satisfies this limitation under the doctrine of equivalents.

32.      The "norepinephrine" in the Baxter Products is "dissolved at a concentration suitable for administration to a patient in need thereof, wherein the norepinephrine is an R-isomer."  (*See, e.g.*, Ex. H at 3.)

33.      The Baxter Products are "substantially free of antioxidants."  (*See, e.g.*, Ex. H at 18.)

34.      The Baxter Products are "formulated such that after storage over at least three months equal or less than 10% of the R-isomer form will isomerize to the S-isomer and such that equal or less than 5% of the total norepinephrine will degrade to degradation products."  (*See, e.g.*, Ex. H at 5-6.)

35.      Plaintiffs are entitled to a judgment that the commercial manufacture, use, offer to sell, or sale within the United States, and/or importation into the United States, of the Baxter Products, or the inducement of and/or contribution to the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of the Baxter Products before expiration of the '436 patent by Baxter or its agents, constitutes infringement, inducement of infringement, and/or contributory infringement of the '436 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

36.      Plaintiffs will be irreparably harmed if Baxter is not enjoined from infringing, inducing, or contributing to infringement of the '436 patent.  Plaintiffs do not have an adequate remedy at law to fully compensate Plaintiffs for their damages.

37.     Baxter's infringement of the '436 patent is willful, entitling Plaintiffs to enhanced damages.  Baxter knew that its Baxter Products would infringe the '436 patent no later than February 19, 2021.

38.     This case is exceptional and Plaintiffs are entitled to an award of reasonable attorney fees under 35 U.S.C. § 285.

## COUNT TWO
### Baxter's Infringement of the '735 Patent

39.     Plaintiffs re-allege and incorporate each of the preceding paragraphs as if fully set forth herein.

40.     Baxter's commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States of the Baxter Products constitutes infringement of at least claim 1 of the '735 patent, both directly under 35 U.S.C. § 271(a) and indirectly under 35 U.S.C. §§ 271(b) and 271(c), literally and/or under the doctrine of equivalents.

41.     Claim 1 of the '735 patent reads as follows:

A method of treating hypotension, comprising:

administering a ready-to-administer norepinephrine composition at an initial dose per minute;

administering the norepinephrine composition at a maintenance dose per minute, wherein the initial dose per minute is greater than the maintenance dose per minute;

wherein the initial dose per minute is a dose of between 8 and 12 μg/min, and wherein the maintenance dose per minute is a dose of between 2 and 4 μg/min;

wherein the norepinephrine composition comprises norepinephrine or a salt thereof at a concentration of between 10 μg/ml and 100 μg/ml in an aqueous acidic solution having a pH range of between 3.7 and 4.3, wherein the aqueous acidic solution further comprises a chelating agent at a concentration of between 1 μg/ml and 100 μg/ml and a tonicity agent;

wherein the norepinephrine composition is substantially free of antioxidants; and

wherein the norepinephrine or a salt thereof in the norepinephrine composition comprises at least about 90% R-isomer of norepinephrine after storage at 25±2° C. and 60±5% relative humidity, over at least three months as determined by HPLC.

42.    Baxter instructs and actively induces physicians to use the Baxter Products to "treat[] hypotension."  (*See, e.g.*, Ex. G at 1.)

43.    Baxter instructs and actively induces physicians to "administer[] a ready-to-administer norepinephrine composition [i.e., the Baxter Products] at an initial dose per minute" followed by "administering the norepinephrine composition at a maintenance dose per minute, wherein the initial dose per minute is greater than the maintenance dose per minute[,] wherein the initial dose per minute is a dose of between 8 and 12 µg/min, and wherein the maintenance dose per minute is a dose of between 2 and 4 µg/min."  (*See, e.g.*, Ex. G at 2-3.)

44.    The Baxter Products contain "norepinephrine or a salt thereof at a concentration of between 10 µg/ml and 100 µg/ml in an aqueous acidic solution having a pH range of between 3.7 and 4.3."  (*See, e.g.*, Ex. G at 1, 7; Ex. H at 21.)

45.    "[T]he aqueous acidic solution" of the Baxter Products "further comprises a chelating agent at a concentration of between 1 µg/ml and 100 µg/ml and a tonicity agent."  As discussed *supra* ¶¶ 28 and 30, the Baxter Products contain either 15.9 µg/mL or 31.8 µg/mL chelating agent.  The Baxter Products also contain two tonicity agents.  First, the '735 patent discloses that NaCl (i.e., table salt, saline) "can be used to increase tonicity."  (*See, e.g.*, Ex. B at 4:50-51; 7:9-15.)  The Baxter Products contain NaCl, which is created when hydrochloric acid and sodium hydroxide used to adjust the Baxter Products' pH are put into the formulation.  (*See, e.g.*, Ex. H at 18.)  The Baxter Products also contain 50 mg/mL dextrose, which the '735 patent also discloses as a "suitable tonicity agent."  (Ex. G at 7; Ex. B at 7:16-19.)

46. The Baxter Products are "substantially free of antioxidants." (*See, e.g.*, Ex. H at 18.)

47. "[T]he norepinephrine or a salt thereof in the [Baxter Products] comprises at least about 90% R-isomer of norepinephrine after storage at $25\pm2°$ C. and $60\pm5\%$ relative humidity, over at least three months as determined by HPLC." The norepinephrine bitartrate used in the Baxter Products is the R-isomer of norepinephrine. (*See, e.g.*, Ex. H at 3.) Stability testing demonstrated that after 7.4 months stored at 25ºC and 40% relative humidity, 90% of the norepinephrine remained in the R-configuration, which indicates that the Baxter Products are stable at the more mild condition of 60% relative humidity. (*See, e.g.*, *id.* at 5-6.) Moreover, it is well-known that isomerization—if it occurs at all—increases over time. So the fact that no more than 10% of the R-isomer converted to the L-isomer after 7.4 months shows that even less than 10% will convert after only three months.

48. Plaintiffs are entitled to a judgment that the commercial manufacture, use, offer to sell, or sale within the United States, and/or importation into the United States, of the Baxter Products, or the inducement of and/or contribution to the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of the Baxter Products before expiration of the '735 patent by Baxter or its agents, constitutes infringement, inducement of infringement, and/or contributory infringement of the '735 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

49. Plaintiffs will be irreparably harmed if Baxter is not enjoined from infringing, inducing, or contributing to infringement of the '735 patent. Plaintiffs do not have an adequate remedy at law to fully compensate Plaintiffs for their damages.

50.    Baxter's infringement of the '735 patent is willful, entitling Plaintiffs to enhanced damages.  Baxter knew that its Baxter Products would infringe the '735 patent no later than February 19, 2021.

51.    This case is exceptional and Plaintiffs are entitled to an award of reasonable attorney fees under 35 U.S.C. § 285.

### COUNT THREE
**Baxter's Infringement of the '026 Patent**

52.    Plaintiffs re-allege and incorporate each of the preceding paragraphs as if fully set forth herein.

53.    Baxter's commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States of the Baxter Products constitutes infringement of at least claim 1 of the '026 patent, both directly under 35 U.S.C. § 271(a) and indirectly under 35 U.S.C. §§ 271(b) and 271(c), literally and/or under the doctrine of equivalents.

54.    Claim 1 of the '026 patent reads as follows:

A method of controlling S-isomer content in a ready-to-administer norepinephrine composition comprising:

admixing an R-isomer of norepinephrine or salt thereof, a chelating agent and a tonicity agent into an aqueous acidic solution having a pH between 3.7 and 4.3;

wherein the chelating agent is present in an amount of between 1 μg/ml and 100 μg/ml, and wherein the tonicity agent is present in an amount of between 0.6 wt % and 1.2 wt %; and

wherein the concentration of norepinephrine or salt thereof is between 10 μg/ml and 100 μg/ml, and wherein the composition is substantially free of anti-oxidants.

55.    The Baxter Products are made via "[a] method of controlling S-isomer content in a ready-to-administer norepinephrine composition."  (*See, e.g.*, Ex. G at 2; Ex. H at 3.)

56.     The process of making the Baxter Products includes "admixing an R-isomer of norepinephrine or salt thereof, a chelating agent and a tonicity agent into an aqueous acidic solution having a pH between 3.7 and 4.3." The norepinephrine bitartrate used in the Baxter Products is an isomer of norepinephrine in the R-configuration. (*See, e.g.*, Ex. H at 3.) As discussed *supra* ¶¶ 28, 30 and 45, the Baxter Products also contain a chelating agent and tonicity agents. The pH of the Baxter Products is 3.8. (*See, e.g.*, Ex. H at 21.)

57.     "[T]he chelating agent [of the Baxter Products] is present in an amount of between 1 µg/ml and 100 µg/ml," as discussed *supra* ¶¶ 28 and 30. On information and belief, the NaCl "tonicity agent" of the Baxter Products, discussed *supra* ¶ 45, "is present in an amount of between 0.6 wt % and 1.2 wt %."

58.     "[T]he concentration of norepinephrine or salt thereof [of the Baxter Products] is between 10 µg/ml and 100 µg/ml." (*See, e.g.*, Ex. G at 1, 7; Ex. H at 21.)

59.     The Baxter Products are also "substantially free of anti-oxidants." (*See, e.g.*, Ex. H at 18.)

60.     Plaintiffs are entitled to a judgment that the commercial manufacture, use, offer to sell, or sale within the United States, and/or importation into the United States, of the Baxter Products, or the inducement of and/or contribution to the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of the Baxter Products before expiration of the '026 patent by Baxter or its agents, constitutes infringement, inducement of infringement, and/or contributory infringement of the '026 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

61.    Plaintiffs will be irreparably harmed if Baxter is not enjoined from infringing, inducing, or contributing to infringement of the '026 patent. Plaintiffs do not have an adequate remedy at law to fully compensate Plaintiffs for their damages.

62.    Baxter's infringement of the '026 patent is willful, entitling Plaintiffs to enhanced damages.  Baxter knew that its Baxter Products would infringe the '026 patent no later than February 19, 2021.

63.    This case is exceptional and Plaintiffs are entitled to an award of reasonable attorney fees under 35 U.S.C. § 285.

## COUNT FOUR
### Baxter's Infringement of the '850 Patent

64.    Plaintiffs re-allege and incorporate each of the preceding paragraphs as if fully set forth herein.

65.    Baxter's commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States of the Baxter Products constitutes infringement of at least claim 1 of the '850 patent, both directly under 35 U.S.C. § 271(a) and indirectly under 35 U.S.C. §§ 271(b) and 271(c), literally and/or under the doctrine of equivalents.

66.    Claim 1 of the '850 patent reads as follows:

A sterile, ready-to-administer, packaged norepinephrine composition, comprising:

a container filled with a sterile, ready-to-administer norepinephrine composition and packaged in a secondary container;

wherein the sterile, ready-to-administer norepinephrine composition comprises norepinephrine or a salt thereof in an amount of between 10 μg/ml and 100 μg/ml, a chelating agent in an amount of between 1 μg/ml and 100 μg/ml, a tonicity adjusting agent in an amount of between 0.6 wt % and 1.2 wt %, and an aqueous acidic solution, wherein the norepinephrine comprises at least 95% of R-isomer of norepinephrine;

wherein the sterile, ready-to-administer norepinephrine composition is substantially free of antioxidants;

wherein the sterile, ready-to-administer norepinephrine composition has a pH of between 3.7 and 4.3; and

wherein the sterile, ready-to-administer, packaged norepinephrine composition comprises at least about 90% R-isomer of norepinephrine after storage at 25±2° C. and 60±5% relative humidity, over at least three months as determined by HPLC.

67.    Each of the Baxter Products is "[a] sterile, ready-to-administer, packaged norepinephrine composition, comprising[] a container filled with a sterile, ready-to-administer norepinephrine composition and packaged in a secondary container."  (*See, e.g.*, Ex. G at 2, 7.) The Baxter Products are stored within "250 ml Viaflo container closure system[s] (i.e., [] infusion bag[s])," (s*ee, e.g.*, Ex. H at 5), which are then stored within cartons, (s*ee, e.g.*, Ex. F at 2).

68.    The Baxter Products contain "norepinephrine or a salt thereof in an amount of between 10 µg/ml and 100 µg/ml."  (*See, e.g.*, Ex. G at 1, 7; Ex. H at 21.)

69.    The Baxter Products also contain "a chelating agent in an amount of between 1 µg/ml and 100 µg/ml, as discussed *supra* ¶¶ 28 and 30.  On information and belief, the Baxter Products contain "a tonicity adjusting agent in an amount of between 0.6 wt % and 1.2 wt %," as discussed *supra* ¶¶ 45 and 57.

70.    The Baxter Products further contain "an aqueous acidic solution, wherein the norepinephrine comprises at least 95% of R-isomer of norepinephrine."  (*See, e.g.*, Ex. G at 7; Ex. H at 21.)

71.     The Baxter Products are also "substantially free of antioxidants."  (*See, e.g.*, Ex. H at 18.)

72.    The Baxter Products have "a pH of between 3.7 and 4.3."  (*See, e.g.*, Ex. H at 21.)

15

73.     The Baxter Products also "comprise[] at least about 90% R-isomer of norepinephrine after storage at 25±2° C. and 60±5% relative humidity, over at least three months as determined by HPLC," as discussed *supra* ¶ 47.

74.     Plaintiffs are entitled to a judgment that the commercial manufacture, use, offer to sell, or sale within the United States, and/or importation into the United States, of the Baxter Products, or the inducement of and/or contribution to the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of the Baxter Products before expiration of the '850 patent by Baxter or its agents, constitutes infringement, inducement of infringement, and/or contributory infringement of the '850 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

75.     Plaintiffs will be irreparably harmed if Baxter is not enjoined from infringing, inducing, or contributing to infringement of the '850 patent. Plaintiffs do not have an adequate remedy at law to fully compensate Plaintiffs for their damages.

76.     Baxter's infringement of the '850 patent is willful, entitling Plaintiffs to enhanced damages.  Baxter knew that its Baxter Products would infringe the '850 patent no later than February 19, 2021.

77.     This case is exceptional and Plaintiffs are entitled to an award of reasonable attorney fees under 35 U.S.C. § 285.

## COUNT FIVE
### Baxter's Infringement of the '458 Patent

78.     Plaintiffs re-allege and incorporate each of the preceding paragraphs as if fully set forth herein.

79.     Baxter's commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States of the Baxter Products constitutes infringement

16

of at least claim 1 of the '458 patent, both directly under 35 U.S.C. § 271(a) and indirectly under

35 U.S.C. §§ 271(b) and 271(c), literally and/or under the doctrine of equivalents.

80.    Claim 1 of the '458 patent reads as follows:

A method of preparing a sterile, ready-to-administer norepinephrine composition, comprising the steps of:

(a) combining norepinephrine or a salt thereof, a chelating agent, a tonicity adjusting agent, and an aqueous acidic solution to form a liquid parenteral composition, wherein the norepinephrine comprises at least 95% of R-isomer of norepinephrine, wherein the norepinephrine or salt thereof is present in the liquid parenteral composition in an amount of between 10 µg/ml and 100 µm/ml, wherein the chelating agent is present in the liquid parenteral composition in an amount of between 1 µg/ml and 100 µm/ml, and wherein the tonicity adjusting agent is present in the liquid parenteral composition in an amount of between 0.6 wt % and 1.2 wt %;

(b) adjusting the pH of the liquid parenteral composition to a pH range of between 3.7 and 4.3;

(c) filling the liquid parenteral composition into a container; and

(d) heat sterilizing the liquid parenteral composition in the container to sterility to form the sterile, ready-to-administer norepinephrine composition;

wherein the sterile, ready-to-administer norepinephrine composition is substantially free of antioxidants; and

wherein the sterile ready-to-administer norepinephrine composition comprises at least about 90% R-isomer of norepinephrine after storage at 25±2° C. and 60±5% relative humidity, over at least three months as determined by HPLC.

81.    Plaintiffs are entitled to a judgment that the commercial manufacture, use, offer to

sell, or sale within the United States, and/or importation into the United States, of the Baxter

Products, or the inducement of and/or contribution to the commercial manufacture, use, offer for

sale, or sale within the United States, and/or importation into the United States, of the Baxter

Products before expiration of the '458 patent by Baxter or its agents, constitutes infringement,

17

inducement of infringement, and/or contributory infringement of the '458 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

82.   The Baxter Products are made via "[a] method of preparing a sterile, ready-to-administer norepinephrine composition." (*See, e.g.*, Ex. G at 2, 7.)

83.   The method of making the Baxter Products includes "combining norepinephrine or a salt thereof, a chelating agent, a tonicity adjusting agent, and an aqueous acidic solution to form a liquid parenteral composition." (*See, e.g.*, Ex. G. at 7; Ex. H at 21; *supra* ¶ 28 regarding the Baxter Product's "chelating agent" and ¶ 45 regarding the Baxter Product's tonicity adjusting agent.)

84.   "[T]he norepinephrine [of the Baxter Products] comprises at least 95% of R-isomer of norepinephrine, wherein the norepinephrine or salt thereof is present in the liquid parenteral composition in an amount of between 10 µg/ml and 100 µm/ml." (*See, e.g.*, Ex. H at 3, 21; Ex. G at 1, 7.)

85.   "[T]he chelating agent [of the Baxter Products] is present in the liquid parenteral composition in an amount of between 1 µg/ml and 100 µm/ml," and, on information and belief, "the tonicity adjusting agent [of the Baxter Products] is present in the liquid parenteral composition in an amount of between 0.6 wt % and 1.2 wt %." (*See supra* ¶¶ 28 and 30 regarding the Baxter Product's "chelating agent" and ¶¶ 45 and 57 regarding the Baxter Product's tonicity adjusting agent.)

86.   The method of making the Baxter Products includes "adjusting the pH of the liquid parenteral composition to a pH range of between 3.7 and 4.3." (*See, e.g.*, Ex. H at 18, 21.)

87.   The method of making the Baxter Products includes "filling the liquid parenteral composition into a container." (*See, e.g.*, Ex. H at 5.)

18

88.    On information and belief, the method of making the Baxter Products includes "heat sterilizing the liquid parenteral composition in the container to sterility to form the sterile, ready-to-administer norepinephrine composition." (*See, e.g.*, Ex. G at 7.)

89.    The Baxter Products are "substantially free of antioxidants." (*See, e.g.*, Ex. H at 18.)

90.    The Baxter Products have "at least about 90% R-isomer of norepinephrine after storage at $25\pm2°$ C. and $60\pm5\%$ relative humidity, over at least three months as determined by HPLC," as discussed *supra* ¶ 47.

91.    Plaintiffs will be irreparably harmed if Baxter is not enjoined from infringing, inducing, or contributing to infringement of the '458 patent. Plaintiffs do not have an adequate remedy at law to fully compensate Plaintiffs for their damages.

92.    Baxter's infringement of the '458 patent is willful, entitling Plaintiffs to enhanced damages. Baxter knew that its Baxter Products would infringe the '458 patent no later than February 19, 2021.

This case is exceptional and Plaintiffs are entitled to an award of reasonable attorney fees under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    adjudge that Baxter has infringed directly, by inducement, and by contribution, one or more claims of the '463 patent, and that the manufacture, use, sale, offer for sale and/or importation of the Baxter Products infringe one or more claims of the '463 patent;

B.    adjudge that Baxter has infringed directly, by inducement, and by contribution, one or more claims of the '735 patent, and that the manufacture, use, sale, offer for sale and/or importation of the Baxter Products infringe one or more claims of the '735 patent;

C.    adjudge that Baxter has infringed directly, by inducement, and by contribution, one or more claims of the '026 patent, and that the manufacture, use, sale, offer for sale and/or importation of the Baxter Products infringe one or more claims of the '026 patent;

D.    adjudge that Baxter has infringed directly, by inducement, and by contribution, one or more claims of the '850 patent, and that the manufacture, use, sale, offer for sale and/or importation of the Baxter Products infringe one or more claims of the '850 patent;

E.    adjudge that Baxter has infringed directly, by inducement, and by contribution, one or more claims of the '458 patent, and that the manufacture, use, sale, offer for sale and/or importation of the Baxter Products infringe one or more claims of the '458 patent;

F.    permanently enjoin Baxter, its officers, agents, servants and employees, and those in active concert or participation with any of them, from infringing any of the Patents-in-Suit, either directly, by inducement, or by contribution;

G.    award Plaintiffs compensatory damages for Baxter's infringement of the Patents-in-Suit;

H.    award Plaintiffs increased damages under 35 U.S.C. § 284 for Baxter's willful and deliberate infringement of the Patents-in-Suit;

20

I.     declare this to be an exceptional case under 35 U.S.C. § 285;

J.     award Plaintiffs their attorney fees and costs incurred in prosecuting this action, together with pre-judgment and post-judgment interest; and

K.     grant Plaintiffs such other and further relief as this Court deems just and proper.

<table>
<tr><td>

OF COUNSEL:

David H. Silverstein
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200
dsilverstein@axinn.com

Aziz Burgy
Christopher M. Gallo
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
aburgy@axinn.com
cgallo@axinn.com

David K. Ludwig
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8100
dludwig@axinn.com

</td><td>

*/s/ Steven J. Fineman*
Steven J. Fineman (#4025)
Kelly E. Farnan (#4395)
Nicole K. Pedi (#6236)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
farnan@rlf.com
pedi@rlf.com

*Attorneys for Plaintiffs Endo Ventures Limited, Par Sterile Products, LLC, and Nevakar Injectables, Inc.*

</td></tr>
</table>

August 18, 2021